IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CYNTHIA A. WILLIAMS                                                                                          PLAINTIFF

VS.                                          CASE NO. 08-CV-1094

GEORGIA-PACIFIC CORPORATION                                                                      DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendant, Georgia-Pacific Wood Products LLC ("Georgia-Pacific"). (Doc. 22). Plaintiff, Cynthia A. Williams, has responded. (Doc. 32). Georgia-Pacific filed a reply. (Doc. 30). The Court finds the matter ripe for consideration.

## BACKGROUND

Ms. Williams was employed as a Utility in the Dryer Department at Georgia-Pacific's Crossett, Arkansas Plywood Mill. The Utility position provides general labor to support the Dryer Department. The Dryer Department is responsible for removing excess moisture from wood by feeding it through heated dryers and then grading the wood's moisture content. The Dryer Department utilizes a variety of machines, including dryers, stackers (which stack the wood), dryer graders (which measure the wood's moisture content), and regraders (which measure moisture content a second time). As a Utility, Ms. Williams performed a variety of manual labor tasks, including cleaning work areas and temporarily operating each of the machines in the Dryer Department while the machine operator was on break. However, Ms. Williams's primary assignment was to operate the regrader, which required her to remove and adjust sheets and strips

of wood as they passed by on a conveyor belt. She would either remove the wood and place it in a bin behind her or let it pass by to be stacked at the end of the conveyor.

On July 23, 2007, the dryers were not operating due to repair, so the shift supervisor, Chuck Wilcox, assigned Ms. Williams to clean underneath the regrader. A few hours later, the dryers began to operate, and Mr. Wilcox asked Ms. Williams to feed the number five dryer. However, Ms. Williams refused this work assignment. According to Ms. Williams, she refused the assignment because it would have aggravated her hip condition. After refusing the work assignment, Ms. Williams accused Mr. Wilcox of grabbing her, which Mr. Wilcox denied. Ms. Williams was suspended from her job.

On July 25, 2007, two days after the job refusal incident, Ms. Williams submitted a Job Requirements Form, filled out by her doctor, to Georgia-Pacific. The form limited Ms. Williams to no more than three hours per day of standing, walking, bending, stooping, or lifting/carrying up to fifty pounds, and no more than one hour per day of pushing up to one hundred pounds or pulling up to seventy-five pounds. These restrictions were because of an avascular necrosis on Ms. Williams's hip, which is a degenerative bone disease that worsens over time.

Georgia-Pacific determined that Plaintiff had been insubordinate and had made false allegations against Mr. Wilcox. Georgia-Pacific terminated Ms. Williams on August 2, 2007. Ms. Williams was a member of the International Association of Machinists and Aerospace Workers, which had a labor agreement with Georgia-Pacific. She filed a grievance contesting whether there was reasonable cause to discharge her under the labor agreement. The arbitrator found that Ms. Williams made false allegations against Mr. Wilcox, which constituted inappropriate conduct. However, the arbitrator concluded that Georgia-Pacific should reinstate Ms. Williams with back pay,

subject to the determination of whether her hip condition could be accommodated so that she could perform her job within her medical restrictions.

On April 29, 2008, Ms. Williams submitted a new Job Requirements Form to Georgia-Pacific that noted more restrictions than the form she completed on July 25, 2007. Specifically, Ms. Williams's physician changed her restrictions from temporary to permanent and limited her to no more than one hour per day of standing, twisting, turning, walking, or lifting/carrying up to ten pounds, and no more than three hours per day of bending, stooping, pushing up to one hundred pounds, or pulling up to seventy-five pounds.

Georgia-Pacific provided a copy of the restrictions to the arbitrator. A representative from Georgia-Pacific met with Ms. Williams and a representative of the union on May 5, 2008, to identify potential accommodations for Ms. Williams. Ms. Williams's union representative requested that Georgia-Pacific permanently assign Ms. Williams to the regrader and limit her to only replacing operators of two of the dryer graders. Georgia-Pacific refused this request, stating that Ms. Williams's restrictions were in excess of the essential job functions of a Utility. Georgia-Pacific further explained that no alternative positions were vacant, especially because it had just laid off over two-hundred employees. The arbitrator then determined that Ms. Williams's condition could not be reasonably accommodated and that she was not entitled to reinstatement. Ms. Williams filed the present lawsuit on December 30, 2008, alleging that Georgia-Pacific had discriminated against her because of her disability by failing to reinstate her in accordance with the arbitrator's award. Presently before the Court is a Motion for Summary Judgment filed by Georgia-Pacific, in which it argues that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c) states that rendering summary judgment against a party is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008) (quoting *F.D.I.C. v. Bell*, 106 F.3d 258 (8th Cir. 1997)). Nevertheless, the "'nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial.'" *Id*. (quoting *F.D.I.C. v. Bell*, 106 F.3d 258 (8th Cir. 1997)). There must be evidence on which the jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986).

**DISCUSSION**

Ms. Williams claims that Georgia-Pacific discriminated against her because of her disability, which is a violation of the Americans with Disabilities Act ("ADA"). *See* 42 U.S.C. § 12112(a). Specifically, Ms. Williams argues that she was able to perform her essential job functions with a reasonable accommodation and that Georgia-Pacific refused to accommodate her. Under the ADA, an employer is required to provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee with a disability, unless the requisite accommodation would impose an undue hardship on the employer's business. *See* 42 U.S.C. § 12112(b)(5)(A).

When a plaintiff claims that an employer failed to make a reasonable accommodation, a modified burden-shifting analysis is appropriate. *Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2007). "Under the modified burden-shifting approach, the employee 'must first make a facial showing that he has an ADA disability and that he has suffered [an] adverse employment action.

Then he must make a facial showing that he is a qualified individual.'" *Id*. (quoting *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327, F.3d 707, 712 (8th Cir. 2003)). "'To be a qualified individual under the ADA, an employee must meet the following requirements: (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodations.'" *Id*. (quoting *Fenney*, 327 F.3d at 712). If an employee claims that he is able to perform the essential functions of the job with a reasonable accommodation, the employee must make a facial showing that a reasonable accommodation is possible. *Id*. (quoting *Fenney*, 327 F.3d at 712). Once the employee has made that facial showing, "'the burden shifts to the employer to show that it is unable to accommodate the employee.'" *Id*. (quoting *Fenney*, 327 F.3d at 712).

Ms. Williams's claim fails because she does not make a prima facie showing that she was a qualified individual under the ADA. Specifically, she fails to show that her request for an accommodations were reasonable accommodations that would permit her to perform the essential functions of the Utility position.

Essential functions include "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). An employer's judgment and written job descriptions are highly probative in determining the essential job functions of a position. 29 C.F.R. § 1630.2(n)(3). Georgia-Pacific's written job description for a Utility includes as essential functions daily sweeping and cleaning up of wood scraps, operating the regrader, and operating every other machine in the Dryer Department for the purpose of temporarily relieving the machine operators when they go on break. Georgia-Pacific's Utility Job Requirements Form states that the person in the Utility position will not sit for more than one hour per day and describes the functions of the Utility position as requiring the following activities on a frequent basis: standing,

walking, twisting, and turning, each for up to six hours per day. Georgia-Pacific supervisors and other hourly employees confirm that the Utility Job Requirements Form accurately depicts the essential functions of the job.

There is no dispute as to whether Ms. Williams was able to perform the essential function of a Utility without accommodation. She clearly could not. The question is whether Ms. Williams would have been able to perform the essential functions of her job with a reasonable accommodation. The Court finds that the accommodations that Ms. Williams proposed were not reasonable.

Ms. Williams argues that she could still perform the essential functions of her job if she was allowed to sit ninety percent of the time, which is how she claims she was informally accommodated by Georgia-Pacific for two years prior to her termination. However, Ms. Williams admitted that, even if she were accommodated with a chair, operating the regrader would still require her to stand and actively sort wood a minimum of fifty percent of the time. Ms. Williams acknowledged that she frequently spent four hours at a time operating the regrader. She further admitted that she could not feed the number five dryer, that operating the dryer graders required standing, that she was required to stand and walk for thirty minutes at the end of every shift to sweep and clean wood scraps, that she was unable to meet the minimum expectations of management in her attempts to operate the stacker, and that pulling wood on the back end of a dryer requires standing eighty percent of the time. Thus, according to Ms. Williams's own testimony, to perform the essential functions of a Utility, she would be required to stand more than one hour per day, which was permanently prohibited by her physician. Accordingly, Ms. Williams's proposed accommodation of sitting down ninety percent of her time (or standing for only ten percent of her time) is not a reasonable accommodation.

Ms. Williams further argues that she could perform her duties as a Utility if she was not required to feed the number five dryer or operate the stacker machines. However, such duties are clearly essential job functions of a Utility, as the Utility must be able to operate all the machines in the Dryer Department to relieve the operators when they go on breaks. Accordingly, the proposed accommodations are not reasonable because feeding the number five dryer and operating the stacker machines are essential functions for the Utility position. Georgia-Pacific was not required to eliminate or reallocate any essential job functions of a Utility to accommodate Ms. Williams. *Rehrs v. Iams Co.*, 486 F.3d 353, 358 (8th Cir. 2007); *Alexander*, 321 F.3d at 728; *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 950 (8th Cir. 1999). Moreover, Ms. Williams admits that she was regularly required to operate the regrader for four hours per day and that the regrader required her to stand fifty percent of the time, even if she was provided a stool. She also acknowledged that she was required to stand and walk for at least thirty minutes at the end of her shift every day to clean up wood scraps. Thus, even if not required to operate the number five dryer or the stacker machines, Ms. Williams was regularly required to stand more than one hour per day to perform the essential functions of her job.

Ms. Williams fails to demonstrate that her suggested accommodations would permit her to perform the essential functions of her job. Therefore, she fails to make a facial showing that she was a "qualified individual" under the ADA. Because Ms. Williams cannot show that a reasonable accommodation was available that would not have placed an undue burden on GP, any discussion regarding whether Georgia-Pacific failed to engage in an interactive process to determine reasonable accommodation is not necessary. *See Alexander*, 321 F.3d at 728; *Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 710 (2002). Accordingly, the Court finds that Ms. Williams's claims against Georgia-Pacific fails as a matter of law.

## CONCLUSION

Upon consideration, the Court finds that the Motion for Summary Judgment filed by Georgia-Pacific should be and hereby is **GRANTED**. Ms. Williams's claims against Georgia-Pacific are hereby **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED, this 7th day of June, 2010.

    /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge